**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GREGG T. CARDIN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,<br><br><br>    Defendant. | No. 21-cv-03350<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gregg Cardin (Cardin) brings this action against Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing (Shellpoint), a mortgage servicer, asserting that Shellpoint improperly bought and charged Cardin for property insurance on his home mortgage loan knowing that Cardin already maintained his own insurance. He asserts a claim on behalf of himself and members of a putative class for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et seq.* (Count I), as well as individual claims for breach of contract (Count II); violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (Count III); and unjust enrichment (Count IV). Before the Court is Shellpoint's motion to dismiss the First Amended Complaint (FAC). R. 39, Mot. Dismiss. For the following reasons, the motion is denied as to Counts I, II, and III and granted as to Count IV, which is dismissed without prejudice.

## Background[1]

Cardin owned the property located at 1550 S. Blue Island Ave, Unit 810, Chicago, Illinois, which was his principal residence. R. 38, FAC ¶¶ 9, 13. Having obtained a mortgage secured by the property, he refinanced the loan in 2014 with Quicken Loans. *Id.* ¶ 14. Pursuant to the terms of the loan, Cardin owed monthly payments of $1,205.00, and was required to (1) make real estate tax payments through an escrow account and (2) maintain property insurance. *Id.* ¶¶ 15–17. Cardin alleges that he maintained his own property insurance policy at all relevant times. *Id.* ¶ 18.

After the refinancing, Ditech Financial LLC serviced the loan until November 2019 when Shellpoint, a mortgage servicer that services mortgage loans nationwide, "acquired and/or began servicing the subject loan." FAC ¶¶ 10–11, 19, 21. Although Cardin was contractually current on the payments when Shellpoint took over the loan, Shellpoint treated the loan as being in default. *Id.* ¶¶ 23, 25. Specifically, on November 12, 2019, Shellpoint sent Cardin correspondence that (1) informed Cardin that Shellpoint was his new mortgage servicer, (2) stated erroneously that the loan had a negative escrow balance of $1,487.72, and (3) stated that Shellpoint was a "debt collector" that was attempting to collect a debt. *Id.* ¶¶ 26, 29–30. Cardin claims he had never been informed of a shortage before November 2019, as he was current on his payments. *Id.* ¶ 27.

---

[1]The Court accepts as true all of the well-pleaded facts in the First Amended Complaint, R. 38, FAC, and draws all reasonable inferences in favor of Cardin. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

From December 2019 through February 2020, Shellpoint sent Cardin mortgage statements that falsely alleged (1) an "overdue payment" fee of $25.00 and (2) an escrow shortage ranging from $1,166.24 to $1,380.56. FAC ¶ 34. During that time, Cardin continued making timely mortgage payments of $1205.23. *Id*. ¶ 35. In January 2020, Shellpoint began sending Cardin "correspondences requesting proof" that he maintained property insurance. *Id*. ¶ 32. Cardin responded by "promptly and repeatedly" providing proof of insurance, first sending Shellpoint "proof of insurance" in January 2020. *Id*. ¶ 33. Shellpoint continued to send statements in March 2020 and April 2020 falsely alleging overdue fees and escrow shortages. *Id*. ¶ 37. The April 2020 statement indicated that Shellpoint charged the loan $806.17 for forced-place[2] hazard insurance, and Cardin's monthly payments nearly doubled to $2,144.04. *Id*. ¶¶ 37, 39. Cardin alleges that, "[a]t the time Shellpoint forced-placed insurance, Shellpoint had actual knowledge that [Cardin] maintained his own insurance policy." *Id*. ¶ 38.

In May, June, and July 2020, Shellpoint continued to send Cardin statements seeking to collect inflated payments with forced-place insurance charges and increased escrow shortages. FAC ¶¶ 42, 44–45. Cardin responded in writing by sending Shellpoint a "copy of the insurance policy" in April, May, and July 2020. *Id*. ¶¶ 40, 43, 46–47 ("[Cardin] repeatedly disputed the forced-placed insurance charges

---

[2]According to Cardin, the term "forced-place insurance" refers to insurance bought by a lender like a mortgage company and charged to the borrower's loan. However, the company must give notice to the borrower and provide time for the borrower to buy his own policy or provide proof of an existing policy. FAC ¶ 37 n.1.

. . . via written correspondences and phone calls. . . . Shellpoint failed to reverse the charges despite having a reasonable time period to do so.").

When Shellpoint bought the forced-place insurance in approximately April 2020, Cardin was in the process of selling the property. FAC ¶ 41. The improper insurance charges increased the amount of money needed to pay off Cardin's loan and effectuate a sale. *Id*. After Cardin repeatedly disputed the insurance charges, Shellpoint told him that it would refund the insurance charges once his proof of insurance was "processed." *Id*. ¶ 48. Under mounting pressure to complete the sale of the property and with Shellpoint's representations regarding a forthcoming refund, Cardin "reluctantly" paid the inflated amounts sought in the May, June, and July 2020 mortgage statements. *Id*. ¶ 49.

A closing for the sale of the property took place on July 21, 2020. FAC ¶ 51. Cardin remitted the payoff to Shellpoint by wire and gave the keys to the property to the buyer. *Id*. However, the sale was not completed because approximately one week after the closing, Shellpoint falsely claimed that Cardin still owed $1,200 in real estate taxes. *Id*. ¶ 52. Approximately four weeks after the July closing, in August 2020, Shellpoint sent Cardin a statement indicating an additional forced-place insurance charge and demanding $4,367.98 to bring the loan current. *Id*. ¶ 54. A similar statement from Shellpoint followed in September 2020. *Id*. ¶ 55 (demanding payment of $6,566.92). And, after the July closing, Shellpoint erroneously demanded an additional $4,297.66 for accrued interest on the loan. *Id*. ¶ 56. "Under duress to

4

formally complete the sale of the subject property, [Cardin] paid the alleged outstanding interest." *Id*. ¶ 57.

Cardin filed this action bringing a claim on behalf of himself and all others similarly situated pursuant to the ICFA (Count I), and individual claims for breach of contract (Count II), violations of the FDCPA (Count III), and unjust enrichment (Count IV). Shellpoint moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. Under Rule

5

8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Claims alleging fraud, on the other hand, must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the ICFA. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citation omitted). Generally speaking, Rule 9(b) requires a complaint to "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal citation omitted). Put differently, a complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (internal quotation marks and citation omitted).

## Analysis

### I.  Notice and Cure

As an initial matter, Shellpoint argues that the complaint should be dismissed in its entirety because Cardin fails to plead compliance with the mortgage contract's pre-suit notice and cure clause. R. 40, Memo. Dismiss at 4. Shellpoint acknowledges that the mortgage contract is not attached to the complaint but attaches the mortgage contract to its motion to dismiss. Shellpoint contends that a court, in resolving a

motion to dismiss, may consider "documents attached to the complaint, documents that are central to the complaint and are referred to it [sic], and information properly subject to judicial notice" and "may take judicial notice of recorded documents." *Id.* (citing *Geinosky v. City of Chicago*, 675 F. 3d 745 (7th Cir. 2012); *Hardaway v. CIT Group/Consumer Fin. Inc.*, 836 F. Supp. 2d 677 (N.D. Ill. Aug. 1, 2011)). However, Shellpoint fails to assert on which basis the Court may consider the mortgage contract. No matter, as Cardin does not object. Therefore, the Court will consider the mortgage contract in resolving the motion to dismiss.

The notice/cure clause provides:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Memo. Dismiss, Exh. A ¶ 20. Shellpoint posits that, had Cardin complied with the notice clause and given Shellpoint written notice of its alleged breach and an opportunity to cure, Cardin would have received a refund and this action would be unnecessary. Memo. Dismiss at 3. According to Shellpoint, because Cardin did not provide notice or a reasonable period to correct the breach, his claims must fail. *Id.*

Cardin responds that, contrary to Shellpoint's allegations, he does allege that he complied with the notice clause. R. 42, Resp. at 2–3 (citing FAC ¶¶ 40, 46, 47). The Court agrees. Cardin alleges that he provided proof of insurance in January 2020, the same month when Shellpoint first requested proof of his insurance. After Shellpoint

began charging him for forced-place insurance in April 2020, Cardin disputed the charges and provided proof of insurance in writing multiple times, specifically sending Shellpoint a copy of his insurance policy in April, May, and July 2020. *See* FAC ¶ 47 (describing these correspondences as "repeated disputes"). Cardin also alleges that he gave Shellpoint an opportunity to cure, as he disputed the charges multiple times before July 2020 and did not file this lawsuit until June 2021, giving Shellpoint over a year to refund the charges. It did not do so until approximately one month after the complaint was filed. *Id.* ¶ 69 n.2. At this stage, Cardin's allegations that he repeatedly disputed the insurance charges in writing are sufficient to allege that he notified Shellpoint of a breach and provided an opportunity to cure, thus satisfying the notice and cure provision.

## II. Breach of Contract

In Count II, Cardin alleges that Shellpoint breached the mortgage contract by, among other things, unilaterally purchasing property insurance and charging Cardin the costs of the policy when Shellpoint had actual knowledge that Cardin had an active property insurance policy on the subject property. FAC ¶ 115. To state a breach of contract action under Illinois law, a plaintiff must show (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 61 N.E.3d 1155, 1159 (Ill. App. Ct. 2016); *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022). Shellpoint argues that the Court should dismiss Count II because Cardin (1) fails to adequately plead that

Shellpoint breached the mortgage contract and (2) fails to allege damages. The Court addresses each argument in turn.

Shellpoint maintains that Cardin fails to include enough detail about the proof of insurance he provided in January 2020, omitting "what he provided as proof of insurance, whether such proof was considered adequate, whether it was provided in writing or in any other form." Memo. Dismiss at 7. The Federal Rules of Civil Procedure, however, do not require a plaintiff to provide evidence. *Addams v. City of Chicago*, 19 F.3d 1436 (7th Cir. 1994). "To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (citation omitted). In viewing the allegations of the complaint in the light most favorable to Cardin (as it must), the Court finds that he plausibly alleges a breach of contract claim. Cardin alleges a contract (the mortgage), that he performed, that Shellpoint breached the mortgage contract, and damages. At this juncture, that is all that Cardin is required to plead.

Shellpoint also contends that Cardin fails to plead a breach of contract claim, as there are no damages because it refunded the charges in July 2021. Memo. Dismiss at 9; R. 43, Reply at 5 (citing *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract.")). Cardin retorts that the refund was issued only after Cardin filed suit, and it would be absurd to allow defendants to defeat breach of contract

claims by making payment *after* a lawsuit is filed. Resp. at 6–7 (citing *MiMedx Grp., Inc. v. Fox*, 2017 WL 3278913, at *6 (N.D. Ill. Aug. 2, 2017) (finding replevin claim not moot because the "availability of damages or other monetary relief almost always avoids mootness") (internal citation and quotation marks omitted).

The Court agrees with Cardin. Shellpoint cites no authority for the proposition that refunds like the one it issued *after* the filing of the complaint suffice to moot damages that existed at the time the complaint was filed. No matter, as the complaint does not reveal exactly what Shellpoint refunded, and importantly Cardin appears to seek pecuniary compensation above the amount of the refund. Resp. at 7 (explaining that he also seeks at least $2,000.00 for "excess interest"); *c.f. Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 597 (7th Cir. 2012). Discovery may shed further light on the facts relevant to this argument, but at this stage, the Court finds Cardin's breach of contract claim is not moot for lack of damages.

### III. Unjust Enrichment

Count IV of the complaint is an individual claim for unjust enrichment, which Cardin "brings . . . as an alternative claim in the event there is no enforceable contract between" the parties. FAC ¶¶ 140, 142. In Illinois, a plaintiff claiming unjust enrichment "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Horwitz v. Wells Fargo*, 2012 WL 5862752, at *2 (N.D. Ill. Nov. 19, 2012). Shellpoint argues that Count IV must be dismissed because "recovery for unjust enrichment is unavailable where

10

the conduct at issue is the subject of an express contract between the plaintiff and defendant[,]" and Count IV incorporates Cardin's previous allegations that the parties had an express contract. FAC ¶ 139; *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013).

Shellpoint is correct. A plaintiff asserting an unjust enrichment claim may not incorporate allegations of an express contract. *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC.,* 2012 WL 1886440, at *15–16 (N.D. Ill. May 22, 2012) (dismissing unjust enrichment and promissory estoppel claims that incorporate paragraphs alleging the existence of a contract). In response, Cardin asks that he be allowed to amend his complaint to strike the part of Count IV incorporating previous paragraphs and cure the problem. Resp. at 8. However, Cardin's unjust enrichment claim is only brought in the alternative to the breach of contract claim, and the Court has denied the motion to dismiss with respect to the breach of contract count. Accordingly, because the breach of contract claim survives the motion to dismiss, Cardin's motion to amend is denied and the unjust enrichment claim is dismissed without prejudice.

## IV.    Illinois Consumer Fraud Act

In Count I, Cardin brings a claim on behalf of himself and the putative class pursuant to the ICFA, which protects consumers against fraud, false promise, and the misrepresentation or concealment, suppression, or omission of any material fact. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Cardin alleges that Shellpoint engaged in deceptive and unfair practices by collecting amounts it was not entitled to, failing to investigate Cardin's disputes, falsely representing that

it would issue a refund, and falsely reporting to credit bureaus that Cardin was delinquent on his loan. FAC ¶ 97.

"The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod*, 673 F.3d at 574 (citation and quotations omitted). The ICFA is "disjunctive, allowing separate claims for unfair acts or practices and deceptive acts or practices." *Sindles v. Saxon Mortg. Servs., Inc.*, 2012 WL 1899401, at *4 (N.D. Ill. May 22, 2012). Cardin pleads both deception and unfairness. *See* FAC ¶¶ 65, 90. Cardin acknowledges that his deceptive practices claim is subject to heightened pleading requirements. Resp. at 9–10; Fed. R. Civ. P. 9(b); *Pniewski v. U.S. Bank Nat'l Assoc.*, 2014 WL 1052813, at *4 (N.D. Ill. Mar. 19, 2014) ("[A] claim under the [ICFA] may allege either deceptive practices, which sound in fraud, or unfair practices, which do not.") (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008)). Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud," which "ordinarily requires describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

Shellpoint advances three arguments for dismissal of Count I. First, Cardin fails to plead his ICFA claims with sufficient detail; his fraud claims are not pled with particularity, and his unfairness claims are implausible under Rule 8. Memo. Dismiss

at 10 (citing *Pniewski*, 2014 WL 1052813 at *4). Second, Cardin's ICFA claim is duplicative of his breach of contract claim. Third, he fails to plead actual damage. The Court will address each argument.

### A. Sufficiency of Pleading

First, Shellpoint argues that the complaint fails to plead deceptive practices with particularity. Specifically, the complaint does not allege that Cardin provided sufficient notice before Shellpoint obtained insurance, and thereby fails to allege that Shellpoint fraudulently obtained forced-place insurance. Shellpoint also asserts that Cardin does not identify when or how he disputed the charges. Cardin counters that he adequately pleads his claim of deceptive practices. The Court agrees. Cardin alleges that between May and July 2020 (when), Shellpoint (who) falsely represented that it would refund the insurance charges (what) when it had no intention of issuing the refund (how). FAC ¶¶ 47–48, 97(e). He then alleges reliance on the deception, saying he paid the charges to complete the pending sale of the property. *Id*. This is sufficient pleading for the purposes of Rule 9(b).

Next, Shellpoint urges that Cardin's disputes regarding the insurance charges cannot amount to claims of unfairness or deception, because Shellpoint's "taking action [by buying insurance] pursuant to a contract is not fraud." Memo. Dismiss at 10. Cardin responds that Shellpoint mischaracterizes his claim of deception. He explains that he does not contend that it was deceptive for Shellpoint to request proof of insurance, or that Shellpoint was not authorized to request the same. Instead, Cardin's deception claim is based on his allegations that Shellpoint falsely

13

represented that (1) the subject loan was in default and (2) it would issue a refund when it had no intention of doing so. Resp. at 10 (citing FAC ¶¶ 49, 95, 97, 99). The Court agrees with Cardin and finds that Cardin's claim for deception under the ICFA survives dismissal at this stage.

Shellpoint also argues that Cardin fails to meet his burden to sufficiently plead unfairness pursuant to Rule 8. "To determine whether a business practice is unfair, the court considers (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1*, 787 F. Supp. 2d 747, 751 (N.D. Ill. Apr. 12, 2011) (citation and quotations omitted); *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008). According to Shellpoint, Cardin pays mere lip service to the standard by (1) saying only that Shellpoint's conduct is against public policy and (2) listing conclusory allegations which fail to draw any connection to Shellpoint's practices. Cardin argues that his allegations regarding Shellpoint's unfair conduct clear Rule 8's hurdle. He claims Shellpoint acted unfairly by (1) treating the loan as defaulted when it was current, (2) wrongfully collecting charges for forced-place insurance, escrow accounts, and accrued interest that were not in fact due, (3) promising a refund without intending to issue one, (4) failing to investigate Cardin's insurance disputes, and (5) failing to deal in good faith. FAC ¶¶ 95–97, 99–107 (Shellpoint engages in a widespread scheme to defraud which is against public policy and injures consumers by forcing them to buy unnecessary,

14

expensive insurance policies). The Court finds that these allegations are enough to put Shellpoint on notice of the claims against it and state a plausible claim.

### B. Duplicative of Breach of Contract

Second, Shellpoint argues that Cardin's ICFA claim should be dismissed because it is duplicative of his breach of contract claim, with a redundant remedy of a return of the escrow amounts or other charges. Memo. Dismiss at 11 (citing *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract.")). By contrast, Cardin characterizes his allegations regarding deception and unfairness as patently distinct from a simple breach of contract claim. Specifically, he points to his allegations that Shellpoint treated the loan as in default when it was current, collected amounts illegally, failed to investigate disputes, and failed to deal in good faith. FAC ¶¶ 95–97. Most notably, he alleges Shellpoint had actual knowledge that he maintained his own policy and engages in a widespread scheme to defraud other consumers in a similar way—even receiving kickbacks from insurers. FAC ¶¶ 5, 61–64. The Court agrees with Cardin that these allegations go beyond a simple claim that the mortgage contract was breached.

Further, the available remedies under breach of contract and the ICFA are not coextensive. For example, punitive damages are generally "not available in actions for breach of contract because a party suing for breach of contract is entitled only to

the benefit of his bargain and the purpose of awarding damages is to place the injured party in the position he would have been had it not been for the breach[.]" *Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463 (Ill. App. Ct. 2004). But the ICFA allows an award of "punitive damages . . . based on unfair conduct in cases where the defendant acts maliciously or with deliberate indifference." *Wendorf v. Landers*, 755 F. Supp. 2d 972, 981 (N.D. Ill. 2010). Here, Cardin alleges that Shellpoint had actual knowledge that he maintained his own insurance and charged him for forced-place insurance anyway, refunding the money only after he filed this lawsuit. And Cardin requests an award of punitive damages in his ICFA count. FAC ¶ 109(e). The Court finds that Cardin's breach of contract and ICFA claims are not duplicative.

### C. Actual Damages

Third, Shellpoint argues that it has now refunded the charges, therefore, the ICFA claim fails for lack of actual damages. Memo. Dismiss at 11 (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (ICFA requires a private plaintiff to "show he suffered 'actual damage' as a result of the defendant's violation of the act.")). Shellpoint acknowledges Cardin's allegation that its conduct negatively affected his credit but contends Cardin does not connect that alleged damage to any unfair or deceptive collection of forced-place insurance. Memo. Dismiss at 12. Cardin responds that his asserted monetary damages of at least $5,078.00 (including interest) are sufficient to state an ICFA claim. FAC ¶ 66. He further points to the alleged non-monetary damages of emotional distress, lost time, and loss of credit opportunity as sufficient "actual damage" to maintain the claim.

16

A private party must allege "actual damage" to maintain an action under the ICFA. 815 ILCS 505/10a(a); *Kim v. Carter's Inc.*, 598 F.3d 362, 365–66 (7th Cir. 2010) (finding "plaintiffs' allegations fail to establish the actual damages element of their ICFA claim" and therefore the claim failed). The actual damage element requires that the plaintiff suffer "actual pecuniary loss." *Kim*, 598 F.3d at 365. Cardin has done that here. Again, the Court must accept Cardin's alleged facts as true and draw inferences in his favor at this stage. As stated above, it is not clear from the complaint that Shellpoint refunded Cardin's entire asserted pecuniary loss. Indeed, while the complaint alleges that Cardin did not receive a refund "for the erroneous forced-place insurance charges" until "Shellpoint finally issued a refund . . . in July 2021[,]" the complaint does not allege whether this refund covered erroneous interest charges or other pecuniary losses asserted by Cardin. FAC ¶ 69. In addition, the complaint alleges that Shellpoint's deceptive and unfair conduct affected Cardin's credit. FAC ¶ 97(f) ("It was unfair and deceptive for Shellpoint to . . . falsely report to the credit bureaus that [Cardin] is delinquent on the subject loan[.]"). Taken together, the allegations in the complaint describe alleged unfair or deceptive acts that caused Cardin actual damage. Accordingly, Cardin has sufficiently pled actual damage to state an ICFA claim.

## V.     Fair Debt Collection Practices Act

In Count III, Cardin brings an individual claim for violations of the FDCPA, which Congress passed to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged,

and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). Cardin asserts that Shellpoint "was attempting to collect a debt" and violated the statute by making false representations regarding the status of the debt and deceptively representing that Cardin owed the costs for forced-place insurance. FAC ¶¶ 124, 127, 131. "To show a violation of the FDCPA, the plaintiff must show (1) that the plaintiff is a 'consumer' within the meaning of the statute; (2) that the defendant collecting the debt is a 'debt collector' within the meaning of the statute; and (3) that the defendant has violated the FDCPA by act or omission." *Anderson v. Leading Edge Recovery Sols., LLC*, 2012 WL 4506012, at *4 n.1 (S.D. Ill. Sept. 30, 2012). At the pleading stage, a plaintiff must therefore plausibly allege that the defendant is a debt collector. *See Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, 2015 WL 8780579, at *3 (N.D. Ill. Dec. 15, 2015) (denying motion to dismiss FDCPA count because "it is plausible that [the defendant] acted as a debt collector under the FDCPA").

The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, the statute excludes from the definition of "debt collector" any person who acquires a debt "which was not in default when it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). "In other words, the [FDCPA] treats assignees as debt collectors if the debt sought to be collected was in default

18

when acquired by the assignee, and as creditors if it was not." *Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *see also McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 501 (7th Cir. 2008) ("[O]ne who acquires a 'debt not in default' is categorically *not* a debt collector."). Further, the Seventh Circuit and other federal appellate courts have held that a person may be considered a debt collector even when acquiring a non-defaulted debt if he *treats* the debt as being in default at the time of acquisition. *Schlosser*, 323 F.3d at 539 (holding the exclusion does not apply and defendant is a debt collector "because [defendant] attempted to collect on a debt that it asserted to be in default"); *see Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 360 n.4 (6th Cir. 2012) ("[A] loan servicer will become a debt collector under § 1692a(6)(F)(iii) if the debt was in default or treated as such when it was acquired[.]").

Shellpoint argues that the above exclusion applies to it here because when it began servicing Cardin's debt in November 2019, the debt was not in default and it treated the debt as current. Therefore, it is excluded from the definition of "debt collector" and cannot be held liable under the FDCPA. To support that assertion, Shellpoint cites the December 4, 2019 mortgage statement, which shows the next contractual due date of the mortgage payment as January 1, 2020. Memo. Dismiss at 13 (citing Exh. C). For Shellpoint, the record is clear that it "treated the loan as current because the due date was for the month following the statement date[,]" and neither fees nor escrow shortages demonstrate default status. *Id.* (citing *JPMorgan Chase Bank, Nat'l Ass'n v. DeGuiseppi*, 2019 WL 1724629, at *1 (C.D. Ill. Apr. 18,

2019) ("[A]n escrow shortage represents the difference between what the account will have at the end of a given annual period and what the account should have, assuming scheduled future payments are made.")); *see Jones v. New Penn Fin., LLC*, 2021 WL 405888, at *2 (E.D.N.Y. Feb. 5, 2021) (finding the mortgage statement was "a periodic notice" and "not debt collection activity covered by the FDCPA"). In addition, Shellpoint argues that (as Cardin alleges) it took many months—until May 2020— before Shellpoint reported to the credit bureaus that Cardin was "30 days late" on his payments. Memo. Dismiss at 13. Lastly, while Shellpoint acknowledges that it identified itself as a "debt collector" in communications with Cardin, Shellpoint urges the Court to disregard those statements because such disclaimers do not "automatically trigger the protections of the FDCPA." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010).

Cardin conversely argues that Shellpoint is a debt collector within the meaning of the statute. Resp. at 14–15. He asserts that the above exclusion does not apply to Shellpoint because Shellpoint "treated the subject loan as in default as soon as it acquired and/or began servicing the subject loan." FAC ¶¶ 120–23 (citing 15 U.S.C. § 1692a(6)). Cardin supports his allegation that Shellpoint considered the loan to be in default by pointing to Shellpoint's November 2019 correspondence. The correspondence erroneously alleged an escrow shortage and an overdue payment fee, which Cardin says illustrates Shellpoint's position that the debt was in default. FAC ¶¶ 25–30 ("Shellpoint's records indicated that the subject loan was in default and Shellpoint treated it as such."). Cardin also contends Shellpoint's November 2019

mortgage statement "alleged that the subject loan was in default." *Id*. Most notably, Cardin alleges—and Shellpoint admits—that Shellpoint's November 12, 2019 correspondence explicitly identified Shellpoint as a "debt collector" that was "attempt[ing] to collect a debt" and informed Cardin that "any information will be used for that purpose." FAC ¶ 26. Cardin argues that Shellpoint's disclosure regarding its identity as a debt collector—which is required by the FDCPA—is evidence that Shellpoint treated the debt as defaulted and was a debt collector. Resp. at 14–15.

At this stage, the Court finds for Cardin on this issue. The complaint explicitly alleges that Shellpoint (1) treated the debt as in default, (2) told Cardin via a mortgage statement that he owed a fee and had a negative escrow balance, and (3) identified itself as a debt collector attempting to collect a debt. The Court must accept Cardin's well-pleaded facts and draw all reasonable inferences in his favor. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). Shellpoint cites no case law establishing that an acquired debt like the subject loan—which was allegedly behind on escrow payments and fees—is not considered to be in default, nor any case that treats a mortgage statement which cites a forthcoming due date as evidence that a loan is considered current. Discovery may shed further light on the status of the debt in November 2019 and whether Shellpoint considered it current at that time. But at the motion to dismiss stage and based on Cardin's allegations, the Court finds the complaint sufficiently states a claim pursuant to the FDCPA.

21

## VI. Class Claims

Cardin brings his ICFA claim individually and on behalf of a class. To obtain class certification, Cardin must ultimately satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009). The complaint defines the putative class as:

> All individuals in the State of Illinois (1) who have/had a mortgage loan serviced by Shellpoint; (2) in which Shellpoint purchased a property insurance policy; (3) and charged the costs of the property insurance policy to the individual's mortgage loan; (4) after the individual submitted proof of insurance to Shellpoint; (5) within the three years preceding the date of the original complaint through the date of class certification.

FAC ¶ 72. Shellpoint moves to strike Cardin's ICFA class claim and advances numerous arguments why class certification is inappropriate. Memo Dismiss at 13 (citing *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. Mar. 17, 2014) (motion to strike class allegations can be appropriate if the "class allegations are facially and inherently deficient")). As an initial matter, Shellpoint claims Cardin does not fall within his own class definition because he does not allege he provided adequate proof of insurance prior to Shellpoint's purchase of insurance. Memo. Dismiss at 14. Next, it contends "[t]here is nothing unlawful or actionable about a lender obtaining a force placed insurance policy[,]" especially "when they have no evidence the coverage is adequate." *Id*. (citing *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 604 (7th Cir. 2013) (dismissing claims because the defendant "had the right to secure the insurance itself and pass the cost on to [plaintiff]")). Shellpoint then repeats its earlier argument that Cardin's allegations of deceptive practices fail to

meet Rule 9(b)'s heightened pleading requirements. Shellpoint also asserts that Cardin states no single question of law or fact common to class members. Memo. Dismiss at 15 (noting that the class could include members with different mortgages and different contract language, raising questions of law not common to the class). Finally, Shellpoint contends that Cardin fails to satisfy Rule 23's requirements because an analysis of Shellpoint's conduct with respect to all class members would be inefficient and impractical. *Id.*

Cardin insists that the question of class certification is premature. Resp. at 15 (citing *Mednick v. Precor, Inc.*, 2014 WL 6474915, at *7 (N.D. Ill. Nov. 13, 2014) ("Whether a plaintiff has fulfilled Rule 23 class action requirements . . . is not an appropriate inquiry at the motion to dismiss stage.")); *see Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *9 (N.D. Ill. July 19, 2017) ("[I]t is premature to determine the propriety of class certification at the motion-to-dismiss stage."). The Court agrees. "[N]othing in the complaint or defendants' explanation of the law persuades [the Court] that it is practicable to resolve the certification question at this stage." *Rysweyk v. Sears Holdings Corp.*, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015) (denying motion to strike class allegations). Class determination will involve considerations "that are enmeshed in the factual and legal issues[.]" *Mednick*, 2014 WL 6474915 at *7. For example, if class members have varied mortgage contracts with different legal provisions, such roadblocks to class certification "can and often should be solved by refining the class definition rather than by flatly denying class certification." *Wagner*, 2017 WL 3070772 at 9 (citing *Messner v. Northshore Univ.*

*HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). Therefore, "it is practical to wait until [Cardin] moves for class certification . . . and the parties provide in-depth analysis of the issues relevant to class certification." *Id.*

In addition, as previously discussed, Cardin sufficiently alleges that he provided proof of insurance and states his ICFA claim with particularity. Shellpoint cites no case striking similar class claims, and the only case it does cite is easily distinguishable because the plaintiff there "did not secure her own insurance." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 606 (7th Cir. 2013). Here, in contrast, Cardin says he always had his own insurance policy and repeatedly communicated that fact to Shellpoint. Cardin's class claims may fail at the certification stage, but they survive the present motion to dismiss.

### VII.  Subject Matter Jurisdiction – Standing

Of Cardin's four asserted counts, only his FDCPA claim raises a federal question, which is the sole basis alleged for the Court's subject matter jurisdiction. FAC ¶¶ 6–7 (asserting the Court has supplemental jurisdiction over the other state law claims). While Shellpoint has not contested Cardin's standing to bring the FDCPA claim, the Court has an independent obligation to assure that it has subject matter jurisdiction. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citation omitted); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) ("Article III standing is jurisdictional and cannot be waived."). Considering Shellpoint's arguments that Cardin has no pecuniary damages after the refund, the Court will briefly discuss the issue of standing.

24

Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The injury-in-fact inquiry "asks whether the plaintiff has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151–52 (7th Cir. 2020) (internal citations and quotations omitted). A concrete injury "must actually exist" and must be "real and not abstract." *Spokeo, Inc.*, 578 U.S. at 340. In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." 578 U.S. at 341. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" because courts presume "general allegations embrace those specific facts that are necessary to support the claim[.]" *Bazile*, 983 F.3d at 278.

The Seventh Circuit has repeatedly held that a breach of the FDCPA "does not, by itself, cause an injury in fact." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 779–80 (7th Cir. 2021) (listing cases). Even where the statutory violation is considered substantive and not merely procedural, a plaintiff must allege a concrete injury. *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (holding plaintiff alleged no harm from the statutory violation and therefore lacked standing, despite alleging that statements in the collection letters were false, deceptive, or

misleading). And "[p]sychological states induced by" a statutory violation, like confusion, worry, and emotional distress, "fall short" of a concrete injury sufficient to confer standing in the FDCPA context. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022); *see Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) ("[A]nxiety and embarrassment are not injuries in fact[.]"); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (Stress and confusion are not concrete harms unless a plaintiff suffered "physical manifestations" or acted "to her detriment, on that confusion[.]"); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020) (annoyance, infuriation, and disgust are not enough for standing). However, "an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos*, 997 F.3d at 780.

Here, Cardin actually paid the insurance charges to Shellpoint, and had not recovered any of that money when he filed this lawsuit. *See Larkin*, 982 F.3d at 1066 (a violation which causes a plaintiff "to pay debts they did not owe" constitutes "a concrete injury that might support . . . standing to sue"). And even if he has been repaid the full amount of monetary damages, Cardin alleges that "Shellpoint's false credit reporting to the credit bureaus destroyed [his] credit score and credit worthiness[.]" FAC ¶ 70. Under Seventh Circuit precedent, that is a sufficiently concrete harm to establish standing under the FDCPA. *See Pierre*, 29 F.4th at 938 (discussing the Seventh Circuit's finding of standing in *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022), where "[t]here was evidence that the statutory

violations caused the plaintiffs' credit scores to decline"); *Gunn*, 982 F.3d at 1071 (discussing how the plaintiffs failed to explain how the contested sentence in the collection letter injured them, as they "did not pay anything in response and do not say that the sentence about foreclosure could have reduced their credit rating."). The Court thus finds that Cardin has sufficiently established standing to bring a claim under the FDCPA.

## Conclusion

For the foregoing reasons, Shellpoint's motion to dismiss [39] is denied as to Counts I, II, and III and granted as to Count IV, which is dismissed without prejudice. The stay of class discovery previously ordered by the Court [46] is hereby lifted.

Dated: October 28, 2022

United States District Judge
Franklin U. Valderrama